CHARLES WM. ROBERTS, Judge Pro Tem.
In 1984, Dr. J.B. Pecot, Dr. Monty Rizzo and Dr. William E. Cherry entered into a business arrangement whereby Dr. Cherry bought out the interest of a third person in certain real property and thereby became an owner in indivisión thereof with Dr. Pecot and Dr. Rizzo.[1] At that time, these individuals formed a corporation, Life Medical Center, Inc., by which they intended to operate a health fitness center in a building located on the property. Each party was issued a certificate showing his ownership of one share of the stock in the corporation. Dr. Cherry’s certificate, dated October 24,1984, remained in the corporate office. Although the record is not clear in this regard, it appears that a part of this business arrangement was a financial restructuring whereby these three parties each mortgaged his interest in the property for the sum of $100,000. Of the total of $300,000, the sum of $180,000 was used to *1082 extinguish the prior indebtedness on the property and the balance was used to renovate the building for its operation by the Life Medical Center.
On August 26, 1985, Dr. Cherry resigned his position as a director of Life Medical Center, Inc., and in November of that year he agreed to sell his interest in the property and his stock in the corporation to two physical therapists for a total consideration of $84,000. The paper work for this transaction, which expressly included both the real property and the stock, was drawn up but was not consummated because the prospective vendees withdrew from the transaction.
In September, 1987, Drs. Pecot and Riz-zo, wishing to install a cover on a pool in the facility, determined that Dr. Cherry did not wish to participate in this additional expenditure, and thereupon commenced negotiations to purchase Dr. Cherry’s interest in the venture. There does not appear to be any doubt that Drs. Pecot and Rizzo intended to buy all of Dr. Cherry’s interest, property as well as stock in Life Medical Center, Inc. There is a serious question, however, as to Dr. Cherry’s intentions.
Dr. Pecot and his wife, Mary Pecot, testified that Dr. Cherry agreed to transfer his interests both in the real property and in the stock in consideration for Drs. Pecot and Rizzo paying off the balance owed by Dr. Cherry on his mortgage, being the sum of approximately $71,000, and forgiving a $10,000 debt owed by Dr. Cherry to Dr. Pecot.
Dr. Cherry, on the other hand, denied that the stock was included in the negotiations. He testified that the only discussion of the stock centered around what it was worth; on being told that the stock was not worth anything, Dr. Cherry assumed that the stock was not to be included in the proposed transaction.
Thereafter, and on September 23, 1987, the parties entered into an act of sale whereby Dr. Cherry transferred to Drs. Pecot and Rizzo his undivided one-third interest in the real property. No mention was made in this document as to the transfer of stock in Life Medical Center, Inc.[2]
When Dr. Cherry subsequently refused to indorse the stock certificate, and thereby transfer its record ownership to them, Drs. Pecot and Rizzo filed this suit for mandamus against Mrs. Mary Pecot, as Secretary of Life Medical Center, Inc., and against Dr. Cherry.
At the conclusion of the proceedings in the court below, the trial judge maintained the writ of mandamus, holding that all the contending parties, including Dr. Cherry, intended by their negotiations to put an end to Dr. Cherry’s involvement in the entire operation, property and stock. For the reasons set out below we hold that the trial judge was clearly wrong in his disposition of this case and we reverse and dismiss the plaintiffs’ suit.
In the first place, this action is not appropriate for a summary proceeding. The facts do not present a situation under which a mandamus is warranted. See LSA-C.C.P. arts. 3861-3866 and Official Comments. Therefore, mandamus was improperly issued by the trial court and must be recalled.
However, we note that a dilatory exception to improper use of summary proceedings was not filed. See LSA-C.C.P. art. 926. Therefore, we will proceed with the appeal in this case as one based on a demand for specific _ performance, since the relevant evidence was adduced on the merits and findings of fact were made by the trial court.
Second, we believe it is questionable as to whether Mary Pecot is the proper party defendant in proceedings to compel transfer of the stock where there has been no indorsement thereof. However, since the rule was filed against Dr. Cherry also, and since he filed answer and appeared through counsel to controvert the evidence, we will regard Dr. Cherry as the proper defendant-appellant in this case.
Much has been contended and argued as to the applicability of the parol evidence rule codified in LSA-C.C. art. 1848, as well *1083 as its exceptions.[3] We do not view the case as one in which this rule has any relevance.
Nor do we believe that the provisions of the Uniform Commercial Code, particularly LSA-R.S. 10:8-301, 307 and 309, have any application to this case since there was neither delivery nor indorsement of the stock certificate by Dr. Cherry.
Since the stock was not mentioned in the act of sale by which the real property was transferred, the plaintiffs are left to prove a transaction by which the stock was intended to be transferred. In this regard, they are not necessarily obliged to show the existence of any written agreement if they rely on an agreement to sell the stock.
However, the evidence offered by the plaintiffs falls woefully short of proving the existence of the three requisites for a valid sale: the thing, the price and consent. LSA-C.C. art. 2439. Certainly, there was no showing made as to the agreed price for the stock. The only witness who testified as to any value or price placed on the stock was Dr. Cherry, who testified that he was told by plaintiffs that the stock had no value and, according to him, “... that was the end of that.”
While the plaintiffs no doubt intended to acquire all of Dr. Cherry’s interest in the Life Medical Center operation, they did not obtain his consent to the stock transfer by negotiating an agreed, even if nominal, price, or by requiring his indorsement of the certificate at closing, or by including the transfer in the act of sale by which they acquired his interest in the real property. Acquisition of the stock appears to this Court to have been a matter of oversight or afterthought, under the factual circumstances which appear in the record.
Thus, while human sympathies might rest with the plaintiffs, a court of law has no alternative but to rule in accordance with the law.
Accordingly, for these reasons, the writ of mandamus is recalled and set aside, the judgment of the trial court is reversed, and plaintiffs’ suit is dismissed. Costs of trial and this appeal are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.

. The record does not adequately reflect the record history of the real property in question. It appears that the property was owned in indi-vision by three individuals, or perhaps a partnership, identified as "Rizzo-Pecot-Carlos” when Dr. Cherry entered the picture. However, the record is clear that at the times pertinent to this lawsuit, the real property was owned in indivisión by the present parties.

. In the previous aborted 1985 transaction, the transfer of stock was specifically included.

. Art. 1848. Testimonial or other evidence not admitted to disprove a writing.
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.